[No. C007688. Third Dist. Dec. 27, 1989.]

DOUGLAS A. KAPLAN, as Public Guardian, etc., Petitioner, v. THE SUPERIOR COURT OF YOLO COUNTY, Respondent; GERALD ADLER, Real Party in Interest.

COUNSEL

Charles R. Mack, County Counsel, C. Lee Humes, Assistant County Counsel, Elizabeth A. Stoltz, Stephen B. Nocita and Victoria E. Davis, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

James V. Nolan and Chalmers, Sans, Gardner & Nolan for Real Party in Interest.

OPINION

PUGLIA, P. J.— ■■■ In this proceeding we are asked to decide whether a private citizen may institute and maintain a petition under the Lanterman-Petris-Short Act (LPS) (Welf. & Inst. Code, § 5000 et seq.) to appoint a conservator of the person when the county's conservatorship investigation officer refuses to do so. We shall conclude that to permit such action by a private individual would violate the letter and spirit of LPS. We shall therefore order a writ of prohibition to issue barring respondent superior court from taking any further action in the underlying proceeding to appoint a conservator, except to dismiss it.

For purposes of consistency and clarity we shall refer to the real party in interest, Gerald Adler, as petitioner, his designation in the underlying proceeding in superior court. The instant petitioner, who is not a party to the underlying proceeding, will be identified by his title of public guardian.

The question raised is a purely legal one, and it is therefore unnecessary to recount any facts beyond a brief procedural history of the dispute between petitioner and the public guardian. In June 1989, two treating psychiatrists requested that the public guardian seek the establishment of an LPS conservatorship of the person of Sonya Adler, petitioner's wife. On June 26 the public guardian refused to act for the reason that, in his opinion, "alternative measures to a conservatorship are available." On July 25, petitioner filed in superior court a "Petition for Appointment of Conservator of the Person" under LPS. The petition alleged that the proposed conservatee, Sonya Adler, was "gravely disabled" within the meaning of LPS, asked that petitioner and Carolyn Young, a private conservator, be appointed coconservators and that the disabilities set forth in Welfare and Institutions Code section 5357, subdivision (d) be imposed on the proposed conservatee. (Further statutory references to sections of an undesignated code are to the

Welfare and Institutions Code.) Although the petition did not name the public guardian as a party, it alleged he had failed to conduct a proper investigation and either failed to exercise his discretion under LPS, or abused that discretion by not commencing an LPS conservatorship proceeding. Petitioner also asked the superior court to order an investigation and the preparation of a conservatorship report pursuant to sections 5354, 5354.5 and 5356.

In response, the public guardian filed a document in superior court entitled "Objection to Filing of Petition," contending that he is the sole person authorized by law to prosecute an LPS conservatorship proceeding, and seeking an order dismissing the petition. The superior court ruled that it does have jurisdiction to entertain a petition brought by someone other than the county's designated investigating officer, and appointed an investigator pursuant to Probate Code section 1454 to prepare a report on the propriety of a conservatorship in this case. The superior court set the matter for hearing on the merits. We have stayed that hearing pending action on the instant application for extraordinary relief.

LPS permits the establishment of a conservatorship over persons who are "gravely disabled" as defined in section 5008, subdivision. (h). *Conservatorship of Early* (1983) 35 Cal.3d 244, 247-248 [197 Cal.Rptr. 539, 673 P.2d 209], outlined the general procedural and substantive prerequisites to appointment of an LPS conservator. Each county in the state is directed to designate a conservatorship investigation agency. (§ 5351.) Yolo County has designated the office of the public guardian. Section 5352 provides that a "professional person in charge of an agency providing comprehensive evaluation or a facility providing intensive treatment" may recommend to the conservatorship investigation officer that a conservatorship be sought. If the officer concurs with that recommendation, section 5352 requires that ". . . he shall petition the superior court in the county of residence of the patient to establish conservatorship." Prior to the hearing on the petition, the conservatorship officer must prepare and present to the court a comprehensive report discussing available alternatives to conservatorship, and detailing pertinent information about the patient's background, including family, medical and psychological history, assets, etc. The report must state whether the investigator recommends a conservatorship, and, if not, describe the possible alternatives. The report must also suggest a suitable conservator, recommend what powers the conservator shall be granted or denied, and suggest an appropriate placement. (§§ 5354, 5355 and 5356.)

Notably absent from LPS is any indication of what consequences follow when the investigation officer receives a recommendation from interested persons that a conservatorship be instituted, but does not concur in that

judgment. The immediate result is clear: no petition is filed by the officer, and the report required by section 5354 is not prepared. However, according to petitioner, this is not the end of the matter. He argues that notwithstanding a decision by the designated agency to refrain from action, any person authorized by the Probate Code to file a petition under its conservatorship provisions may also pursue an LPS remedy.

The starting point for petitioner's argument is section 5350, which states, in part: "The procedure for establishing, administering and terminating conservatorship under this chapter shall be the same as that provided in Division 4 (commencing with Section 1400) of the Probate Code except as follows: . . ." The statute then lists several procedural requirements not found in the Probate Code, none of which are pertinent here. Relying on this incorporating provision, petitioner reasons that since Probate Code section 1820, subdivision (a)(2) lists the proposed conservatee's spouse among the persons who may petition for the creation of a probate conservatorship, the spouse may also prosecute an action under LPS to impose a conservatorship on his wife.

The very simplicity of petitioner's argument bestows upon it a certain allure, but when more closely scrutinized it is untenable. For several reasons arising out of the policies and purposes underlying LPS, as well as its specific language, we are convinced that the question who is the proper person to initiate and maintain a conservatorship proceeding under its auspices is not a mere matter of "procedure" within the meaning of section 5350. Rather, given the comprehensive scheme for the treatment and care of gravely disabled persons set forth in LPS, the fact that the conservatorship investigation officer is the only person expressly authorized to institute a judicial proceeding is strong indication that such limitation is an integral aspect of the substantive protections in LPS designed to protect against unwarranted involuntary commitments.

 " ' "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] Moreover, 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.]" (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [ ].) A construction rendering statutory language surplusage " 'is to be avoided.' " [Citations.]' " (*Sacramento County Employees Organization* v. *County of Sacramento* (1988) 201 Cal.App.3d 845, 855 [247 Cal.Rptr. 333].) Thus, we are obligated to look to all the provisions in LPS and related statutes in our effort to resolve the present issue, which the Legislature has not specifically addressed.

■ We first reject petitioner's argument that the incorporation by section 5350 of Probate Code conservatorship procedures necessarily means that any aspect of the Probate Code not expressly excepted by section 5350 automatically becomes applicable in an LPS action. ■ "It is . . . settled law that when a special and a general statute are in conflict, the former controls. (Code Civ. Proc., § 1859.) The special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. [Citations.]" (*Nunes Turfgrass, Inc.* v. *Vaughan-Jacklin Seed Co., Inc.* (1988) 200 Cal.App.3d 1518, 1539 [246 Cal.Rptr. 823].)

■ Here, two specific provisions, one in the Probate Code and one in LPS, directly conflict with petitioner's interpretation of section 5350. First, petitioner's own pleadings make it clear that the primary reason he seeks to become conservator of his wife's person is to obtain power to place her in a mental health facility when he believes such confinement necessary. However, Probate Code section 2356, subdivision (a), provides that no conservatee shall be placed in such a facility except pursuant to LPS. Thus, the Probate Code itself, which petitioner relies on to justify his assertion that he may prosecute an LPS proceeding, refers him back to LPS in order to exercise the exact authority he seeks.

This leads us to the second statutory provision which refutes petitioner's reasoning. Under LPS, a conservator may only be appointed in cases where the conservatee is proven to be "gravely disabled." (§ 5350.) LPS then deals a fatal blow to petitioner's contentions in section 5114, which reads in pertinent part: "At any judicial proceeding under the provisions of this division, allegations that the person is a danger to others, or to himself, or gravely disabled as a result of mental disorder . . . , shall be presented by the district attorney for the county, unless the board of supervisors . . . delegates such authority to the county counsel."

We hardly need explain the implications for petitioner of section 5114. Simply put, to establish the LPS conservatorship he seeks, it must be proven that his wife is gravely disabled. Only the district attorney (or county counsel) may present evidence to establish such an allegation. Petitioner is not represented by either of those officers. Therefore, he cannot maintain the underlying conservatorship proceeding.

Nor is this the only reason we have for concluding that petitioner cannot initiate or maintain an LPS conservatorship proceeding. Another canon of statutory construction also comes into play here. ■ According to the doctrine of *expressio unius est exclusio alterius,* a statutory grant of power or expression of how such power is to be exercised implies that no other power

passes and that no other mode of exercise is permitted. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537]; *Martello* v. *Superior Court* (1927) 202 Cal. 400, 405 [261 P. 476].) ■ The power to commence an LPS conservatorship has been expressly granted to the designated agency, here the public guardian, and the only person authorized to present evidence in support of the petition is the district attorney or county counsel. Such specificity strongly implies that the right to initiate and prosecute a conservatorship proceeding under LPS does not extend to others, even those who may have standing to bring a Probate Code proceeding.

Furthermore, the result we reach is consistent with the underlying objectives the Legislature sought to achieve through LPS. The purpose of LPS has been stated in section 5001. The Legislature has there declared that its intent is, inter alia, to "end the inappropriate, indefinite, and involuntary commitment of mentally disordered persons" (subd. (a)), and "[t]o safeguard individual rights through judicial review. . . ." (Subd. (d).) A person subjected to conservatorship proceedings under LPS faces both involuntary commitment and the social stigma attaching to one found "gravely disabled" as a result of a mental disorder. (See *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 223-228 [152 Cal.Rptr. 425, 590 P.2d 1].) In order to protect the liberty and dignity of persons threatened with confinement in a mental health facility, the Legislature has determined that the safeguards attending Probate Code conservatorships are insufficient, and has required that such restraints may be imposed only after complying with LPS. A vital element of this protective framework is the vesting in a public official the duty to investigate the need for a conservatorship which may lead to commitment, and the discretion to file a petition in light of that investigation.

To allow anyone who may initiate a Probate Code conservatorship to assume the role of "prosecutor" in an LPS proceeding would run counter to these protections. The effect would be to eliminate a key element of a statutory structure designed to assure that abuses of the mental health system in the form of unwarranted commitments are avoided. Here, as in the case of a criminal defendant, it is appropriate that when the power of the state is invoked to deprive an individual of her freedom, the decision to commence judicial proceedings should be left to a public officer. (Cf. *People* v. *Municipal Court (Pellegrino)* (1972) 27 Cal.App.3d 193, 200-205 [103 Cal.Rptr. 645, 66 A.L.R.3d 717].)

For all the foregoing reasons, we conclude that only the county's designated conservatorship investigation officer may file and prosecute a petition to establish an LPS conservatorship. ■ When, as is the case here, a judicial proceeding is initiated by one without lawful authority to do so,

prohibition is an appropriate remedy. (Cf. *Menveg* v. *Municipal Court* (1964) 226 Cal.App.2d 569, 574 [38 Cal.Rptr. 232].)

Finally, although the issue has not been raised, we note that the public guardian, although not a party to the trial court proceedings, is not precluded from seeking relief in this court. An extraordinary writ may be sought by any beneficially interested person, even one not a party to the proceeding out of which the need for such a remedy arises. (Code Civ. Proc., §§ 1086, 1103; and see *Monterey Club* v. *Superior Court* (1941) 48 Cal.App.2d 131 [119 P.2d 349]; CEB, Cal. Civil Writ Practice 2d Cont. Ed. Bar (1987) § 3.5, p. 80.) As the public officer upon whom the Legislature has bestowed the duty and authority to administer LPS, the public guardian is directly aggrieved by petitioner's attempt to usurp that function.

Let a peremptory writ of prohibition issue restraining respondent superior court from taking any further action in Yolo County case No. 19342, except to dismiss the petition. On finality of this decision, the stay previously issued will be vacated.

Evans, J., and DeCristoforo, J., concurred.