Filed 12/29/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CONSERVATORSHIP OF THE PERSON AND ESTATE OF LEE C. | C081673 |
| THE PEOPLE, | (Super. Ct. Nos. MC RD CRF 140002461, 15 LP SQ 0003664) |
| Plaintiff and Respondent, | |
| v. | |
| LEE C., | |
| Defendant and Respondent; | |
| SHASTA COUNTY PUBLIC GUARDIAN, | |
| Petitioner and Appellant. | |

APPEAL from a judgment of the Superior Court of Shasta County, Daniel E. Flynn, Judge. The orders of the trial court are vacated and remanded with directions.

Rubin E. Cruse, Jr., County Counsel, James R. Ross, Adam M. Pressman, Deputy County Counsel; Lewis Brisbois Bisgaard & Smith, Kira L. Klatchko, Lann G. McIntyre, and Jeffry A. Miller, for Petitioner and Appellant.

1

Jennifer B. Henning and Janis L. Herbstman for California State Association of Counties et al. as Amici Curiae on behalf of Petitioner and Appellant.

Stephen Carlton, District Attorney, Brandon Storment, Deputy District Attorney, Pressman for Plaintiff and Respondent.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Respondent.

A Murphy conservatorship under the Lanterman-Petris-Short Act (LPS or LPS Act) (Welf. & Inst. Code, §§ 5000 et seq.) may be established for criminal defendants who have been found incompetent to stand trial under Penal Code section 1370; have a pending information or indictment for a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person; and are presently dangerous. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B); *Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 176-177 (*Hofferber*).) The claims in this case require that we discuss both the scope of the public guardian's discretion whether to petition and prosecute for a Murphy conservatorship and the trial court's authority to control and review the exercise of that discretion.

In 2014 a complaint charged Lee C. (L.C.) with corporal injury to a cohabitant. The trial court found L.C. incompetent to stand trial and committed him to a state hospital. After the state hospital reported he was unlikely to be restored to competency in the foreseeable future, his counsel requested a preliminary hearing pursuant to Penal Code section 1368.1. The court then referred L.C. to the Shasta County Public Guardian (Public Guardian) to initiate proceedings for a Murphy conservatorship.

The Public Guardian objected to the referral on the basis that two criteria for a Murphy conservatorship were not met, and also protested that there was no funding to pay for the conservatorship. The trial court ordered the Public Guardian to petition for a Murphy conservatorship. The Public Guardian, represented by (Shasta) county counsel,

2

filed the petition but continued to resist proceeding with the case. The Public Guardian sought to dismiss the petition and vacate the court's order to proceed to a conservatorship trial. On the People's invitation, the court disqualified county counsel and appointed the Shasta County District Attorney to prosecute the petition for a Murphy conservatorship.

The Public Guardian appeals from the disqualification order, claiming it was an unlawful means to control and limit his discretion with respect to Murphy conservatorships. The Public Guardian further contends the trial court erred in its determination that two of the criteria for a Murphy conservatorship had been established; he asserts the pending information was not valid and the charged felony did not involve death, great bodily harm, or a serious threat to the physical well-being of another person. The Public Guardian makes the additional arguments that: (1) the criminal trial court lacked jurisdiction to interfere with conservatorship proceedings assigned to another court; (2) there was no misconduct to discipline with a disqualification order; (3) the order violated the separation of powers doctrine; and (4) the district attorney lacked standing.

The disqualification order was premised on the court's orders to file the petition for the Murphy conservatorship and take the matter to trial. As we will explain, we conclude the court had no authority to make those orders. Accordingly, we vacate the order disqualifying county counsel for its failure to follow the invalid orders.

The trial court did, however, have authority to review the Public Guardian's decision not to file the petition for an abuse of discretion. As to that issue, we agree with the court that the Public Guardian abused his discretion in determining that two criteria for a Murphy conservatorship could not be satisfied, because that determination was based on an incorrect interpretation of the law. However, because the trial court cannot compel the filing of a Murphy conservatorship petition, we vacate the orders to file the petition and take the case to trial.

3

We remand for further proceedings so the Public Guardian may exercise his discretion in accordance with the law and decide whether to file the petition for a Murphy conservatorship.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Events Leading to Referral to Public Guardian*

In April 2014, the People charged defendant L.C. by complaint with corporal injury on a cohabitant (Pen. Code, § 273.5) and a strike prior. The trial court found L.C. incompetent to stand trial and committed him to Napa State Hospital. The state hospital subsequently reported that L.C. would not be restored to competency in the foreseeable future and recommended that the court consider initiating a conservatorship investigation.

The defense requested a preliminary hearing pursuant to Penal Code section 1368.1, which permits defense counsel to request a preliminary examination prior to a competency hearing. At the preliminary hearing, the People presented evidence that L.C. was living with the victim. He ordered her to come in his room and she refused. L.C. put a dog leash around the victim's neck and dragged her to the floor. He then tightened the leash and dragged the victim through the front door and into the front yard, a total of 40 to 50 feet. The victim had trouble breathing and suffered pain, with redness and raised welts on her neck.

At the conclusion of the preliminary hearing, the trial court found probable cause to support all charges and referred the case to the Public Guardian to investigate a Murphy conservatorship for L.C.

*The Public Guardian's Objections*

The Public Guardian objected to the referral on three grounds. He claimed the preliminary hearing violated L.C.'s due process rights because it was held while L.C. was incompetent; the charge of corporal injury on a cohabitant was insufficiently serious because it did not involve death, great bodily injury, or a serious threat to the well-being of another; and there were no funds to pay for L.C.'s placement at a state hospital. As to

4

the last point, the Public Guardian submitted a declaration stating that it cost $228,500 a year to place a conservatee at a state hospital and the Shasta County Public Guardian did not have those funds.

The court overruled the objections and ordered the Public Guardian to evaluate L.C. for a Murphy conservatorship. In response to the Public Guardian's financial concerns, the court responded its overriding concern was the danger to the community; the issue of funding was not before the court.

The Public Guardian submitted an investigation report. The report concluded that L.C. was a danger to others. However, that same report also concluded the criteria of (1) a pending information, and (2) a charge of a felony involving death, great bodily injury, or a serious threat to the well-being of another were not satisfied. Accordingly, the Public Guardian would not agree to serve as conservator.

*The Order to File a Petition*

The People requested a hearing on whether the Public Guardian had abused his discretion in failing to file a petition for a Murphy conservatorship. At the hearing, county counsel confirmed that the position of the Public Guardian was that he would not agree to file a petition for a conservatorship. County counsel reiterated the Public Guardian's earlier assertion of two unsatisfied criteria. Further, counsel asserted: "Right now, there isn't a way to pay for this to happen. Now, I will waive every objection we have and proceed with great vigor to a trial against this gentleman if the People or anybody else will step up and pay for the conservatorship."

The trial court found the failure to file a petition was an abuse of discretion and *ordered* the Public Guardian to file the petition. The trial court apparently believed that if the criteria for a Murphy conservatorship were met--and it found they were here--then a petition must be filed regardless of financial considerations.

The Public Guardian petitioned this court for a writ of mandate to vacate the trial court's order, arguing the filing of a petition was not warranted as all necessary criteria

5

had not been satisfied. This court summarily denied the petition. (*Ewert, as Public Guardian v. The Superior Court of Shasta County* (C079378, June 19, 2015).)

The Public Guardian filed the petition for a Murphy conservatorship for L.C. The petition stated that in the opinion of the Public Guardian the information had been obtained in violation of L.C.'s due process rights and prayed that the petition not be granted.

*Motions to Dismiss the Information*

L.C. moved to dismiss the information, both pursuant to Penal Code section 995 and by a non-statutory motion. Both motions were denied. L.C. petitioned this court for a writ of mandate to dismiss the information, arguing that it was error to hold a preliminary hearing under the circumstances. This court summarily denied the petition. (*Clark v. Superior Court* (C080476, Nov. 6, 2015).)

*Order to Proceed to a Conservatorship Trial*

The matter was sent back to criminal court after the Public Guardian filed a motion to dismiss the petition. At a hearing (in conservatorship court) held on December 15, 2015, county counsel stated he and his client (the Public Guardian) did not believe the petition for a conservatorship had merit, but they filed it because they were ordered to do so. Counsel now believed he faced an irreconcilable conflict, asking for a decision that was contrary to the law, but he would do as directed. The (criminal) court ordered county counsel to proceed, "as your ethical responsibilities require, which includes calling all necessary witnesses." After further discussion, the court ordered further briefing.

The Public Guardian moved to vacate the trial court's order that he proceed to a trial on the conservatorship petition and for an order to refer all matters relating to the conservatorship to the conservatorship court. The Public Guardian confirmed that he had

asked the conservatorship court to dismiss the petition pursuant to Code of Civil Procedure section 581.[1]

*Order to Disqualify County Counsel*

In response to county counsel's reluctance to file and prosecute the petition, the People invited the trial court to disqualify county counsel from representing the Public Guardian pursuant to the court's inherent authority under section 128, subdivision (a)(5). The Public Guardian strongly opposed disqualification of county counsel. In a supporting declaration, the Public Guardian declared that funds of approximately $485,000 from a trust fund, a promissory note, and an inherited individual retirement account had been discovered that could be used to fund L.C.'s conservatorship.

At the hearing on this motion, the trial court agreed with the district attorney that county counsel should be disqualified, reasoning that the Murphy conservatorship arose from the criminal case and therefore county counsel stood in the position of the People, charged to protect the public. The court found county counsel had a conflict because it had given the Public Guardian advice for primarily financial reasons and not with regard to public safety, against the charge of the Murphy conservatorship. The court opined the objection to proceeding to trial was fiscal, because the two legal objections county counsel had raised--regarding the allegedly unsatisfied criteria--were without merit. County counsel argued the financial aspect was no longer an issue because funding had been discovered. Counsel further argued the court had no authority to rule that dismissal under section 581 was not applicable to conservatorship proceedings and that the court was facing a potential separation of powers issue. The court stated its order to proceed to trial was based on its inherent authority to enforce its orders under section 128.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

The trial court disqualified county counsel from prosecuting the conservatorship petition and appointed the district attorney to do so; the disqualification was stayed pending appeal.  The court found the information was valid for purposes of establishing a conservatorship and that whether the Penal Code section 273.5 charge was sufficiently serious to meet the standard was an issue for the jury.  The court expressed dismay that, in its view, neither county counsel nor the Public Guardian was concerned with public safety.  The court found the Murphy conservatorship was a quasi-criminal proceeding so any dismissal had to be under Penal Code section 1385 and in the furtherance of justice rather than a voluntary dismissal under Code of Civil Procedure section 581.

The Public Guardian appealed.

## DISCUSSION

### I

### *Motion to Disqualify Counsel*

The Public Guardian first claims the disqualification order was an unlawful means to control and limit his discretion with respect to Murphy conservatorships.  The People (as respondent) address only the issue of whether the trial court had *authority* to disqualify county counsel, not whether the disqualification *itself* was lawful.  The People assert only that the court had such authority under section 128, subdivision (a)(4), which permits it to compel obedience with its orders, and subdivision (a)(5), which permits it to control the proceedings before it, and cite no relevant authority.

Initially, because a disqualification order interferes with a client's right to chosen counsel (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145), we question whether disqualification is an available remedy for compelling obedience with a court order--or punishing disobedience therewith.  The People offer no authority for the proposition that disqualification of counsel is an appropriate means to enforce a court order, and do not explain why the

8

usual remedy of contempt was insufficient.  (See  § 1209, subd. (a)(5) [disobedience with lawful order is a contempt].)

In any event, the court's authority to enforce its own orders extends only to *lawful* orders.  (See § 177 ["Every judicial officer shall have the power  [¶]  . . .  [¶]  [t]o compel obedience to his lawful orders . . . "]; *Ex parte Brown* (1892) 97 Cal. 83, 85 [it "is the settled law of this state that no court or judge has power to punish as a contempt the violation or disregard of an unlawful order"].)  Whether the trial court's order compelling the Public Guardian to file the petition for a Murphy conservatorship--and take the matter to trial without moving to dismiss--was lawful is the question we must answer, and the true subject of this appeal.  Without a lawful order, there can be no valid enforcement.

The trial court has authority to grant a motion to disqualify an attorney under its powers to control the proceeding before it pursuant to section 128, subdivision (a)(5). (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 831.)  It is undisputed that the People "invited" the motion to disqualify.  County counsel argues that the People had no attorney-client relationship with county counsel or the Public Guardian and had no role in the conservatorship proceedings and thus no standing to bring a motion to disqualify counsel.  "Generally, before the disqualification of an attorney is proper, the complaining party must have or must have had an attorney-client relationship with that attorney."  (*Great Lakes Const., Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1356.) California, however, permits a non-client to move for disqualification of opposing counsel under certain circumstances.  "[W]hile federal courts generally limit standing to bring disqualification motions to clients or former clients [citation], in California 'where the ethical breach is " 'manifest and glaring' " and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation.'  [Citation]."  (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th

9

1197, 1204.) "Accordingly, we conclude that where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel." (*Id.* at p. 1205.)

The exact nature of the "conflict of interest or other ethical violation" that justifies the disqualification is unclear. The People rely on county counsel's contention that he had an "irreconcilable conflict" because he was being forced to seek a judgment he did not believe was warranted under the law. The trial court, on the other hand, found the conflict of interest was that county counsel based his advice to the Public Guardian on financial considerations rather than those of public safety, which was improper. Any claim of a conflict of interest or a risk to the integrity of the judicial process relies on the validity of the trial court's orders compelling the Public Guardian, represented by county counsel, to proceed with the Murphy conservatorship against his wishes. Again, it is the trial court's *authority to issue those orders* in the first place that is at issue here, not merely the court's authority to subsequently remove county counsel from representing the Public Guardian.

The People's complete failure to brief that issue is apparently based on their belief that the lawfulness of the trial court's orders was definitively resolved by the writ proceedings in this court. That belief, expressed to the criminal trial court at the hearing returning the matter from conservatorship court, is mistaken. Summary denial of a writ petition has no precedential value and does not constitute litigation of the issues. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) The People's failure to recognize this fact and brief the issues presented means that we must address the complex issues raised by this

10

case without their assistance.[2] (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 719, p. 787 [duty of respondent to assist court on appeal].)

## II

### *Murphy Conservatorships*

"The Lanterman-Petris-Short Act (the act) governs the involuntary treatment of the mentally ill in California. Enacted by the Legislature in 1967, the act includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008-1009.) "The act authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental disorder and unable or unwilling to accept voluntary treatment." (*Id.* at p. 1009.)

Originally, the LPS Act defined "gravely disabled" only to mean "a condition in which a person, as a result of mental disorder or impairment by chronic alcoholism, is unable to provide for his basic personal needs for food, clothing, or shelter." (Stats. 1967, ch. 1667, § 36, p. 4077.) In 1974, in response to case law limiting the commitment of criminal defendants found incompetent to stand trial (see *People v. Sheirik* (1991) 229 Cal.App.3d 444, 456-457 (*Sheirik*)), an amendment added a second definition of "gravely disabled" to the act. (Stats. 1974, ch. 1511, § 12, pp. 3321-3322.) Welfare and Institutions Code section 5008, subdivision (h)(1) now defines "gravely disabled" to

---

[2] In our order setting this case for oral argument, we directed the parties to address the lawfulness of the trial court's order to file a petition and prosecute a trial on the petition. The parties did so. Thus the People were heard on this point at oral argument.

11

mean either: "(A) A condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter. [¶] (B) A condition in which a person, has been found mentally incompetent under Section 1370 of the Penal Code and all of the following facts exist: [¶] (i) The indictment or information pending against the person at the time of commitment charges a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person. [¶] (ii) The indictment or information has not been dismissed. [¶] (iii) As a result of a mental health disorder, the person is unable to understand the nature and purpose of the proceedings taken against him or her and to assist counsel in the conduct of his or her defense in a rational manner."

Conservatorships under the second definition of "gravely disabled" are known as Murphy conservatorships after the legislator who sponsored the legislation. (*Conservatorship of Christopher B.* (2015) 240 Cal.App.4th 809, 811.) To the statutory requirements of a Murphy conservatorship, our Supreme Court has added the constitutionally required finding "that, by reason of a mental disease, defect, or disorder, the person represents a substantial danger of physical harm to others." (*Hofferber, supra,* 28 Cal.3d at pp. 176-177.) The Murphy conservatorship was added "to address the difficult problem of integrating and resolving the conflicting concerns of protecting society from dangerous individuals who are not subject to criminal prosecution, preserving a libertarian policy regarding the indefinite commitment of mentally incompetent individuals who have yet to be convicted of criminal conduct, and safeguarding the freedom of incompetent criminal defendants who present no threat to the public." (*Skeirik, supra,* 229 Cal.App.3d at p. 456.)

Conservatorship proceedings may be initiated in several ways. The conservatorship investigator is to proceed in accordance with the provisions of Welfare and Institutions Code sections 5350 et seq. (Pen. Code, 1370, subd. (c)(2).) As relevant here, Penal Code section 1370, subdivision (c)(2) authorizes the court to order the

conservatorship investigator to initiate conservatorship proceedings when it appears to the court the defendant is gravely disabled under the definition applicable to Murphy conservatorships. The conservatorship investigator, here the Public Guardian (see Welf.& Inst. Code, § 5351), conducts an investigation. "The officer providing conservatorship investigation shall investigate all available alternatives to conservatorship and shall recommend conservatorship to the court only if no suitable alternatives are available." (*Id.*, § 5354, subd. (a).)

The district attorney shall present allegations that the person is gravely disabled in any court proceeding, unless the board of supervisors has delegated such duty to county counsel. (Welf. & Inst. Code, § 5114.) The Shasta County Board of Supervisors has delegated that duty to county counsel. The person for whom the conservatorship is sought has the right to a jury trial on the issue of whether the person is gravely disabled. (*Id.*, § 5350, subd. (d)(1).) The standard of proof is beyond a reasonable doubt. (*Hofferber, supra,* 28 Cal.3d at p. 178.) The Murphy conservatorship expires after one year and the conservator may petition for reappointment for a succeeding one-year period. (Welf. & Inst. Code, § 5361.)

### III

*Scope of Public Guardian's Discretion as to Murphy Conservatorships*

Here, the Public Guardian disputed the recommendation for a Murphy conservatorship. The initial question is whether the trial court was legally permitted to compel the Public Guardian, over his objection, to petition for a Murphy conservatorship and take the matter to trial. Two published cases have addressed this question. Before discussing those cases, we explore other aspects of the Public Guardian's discretion as to conservatorships for the gravely disabled.

In *Kaplan v. Superior Court* (1989) 216 Cal.App.3d 1354 (*Kaplan*), two treating psychiatrists requested that the public guardian seek establishment of a conservatorship for a woman under the LPS Act, but the public guardian refused based on the belief that

13

alternative measures were available. The woman's husband filed a petition, seeking a conservatorship for his wife with a private conservator and alleging the public guardian had abused its discretion by not filing the petition. The trial court ruled it did not have jurisdiction to entertain an LPS Act petition brought by anyone other than the county's appointed investigating officer. (*Id.* at pp. 1356-1357.) This court affirmed, basing our decision on both the statutory language and objectives of the LPS Act. Under the statutory scheme, the conservatorship investigating officer was the only person authorized to institute a legal proceeding. (*Id.* at p. 1358.) Only the district attorney or county counsel was authorized by statute to prove the proposed conservatee was gravely disabled. (*Id.* at p. 1359.) "Such specificity strongly implies that the right to initiate and prosecute a conservatorship proceeding under LPS does not extend to others . . . ." (*Id.* at p. 1360.)

Limiting the right to initiate and prosecute an LPS Act conservatorship to the public guardian also was consistent with the objectives of the LPS Act. "In order to protect the liberty and dignity of persons threatened with confinement in a mental health facility, the Legislature has determined that the safeguards attending Probate Code conservatorships are insufficient, and has required that such restraints may be imposed only after complying with LPS. A vital element of this protective framework is the vesting in a public official the duty to investigate the need for a conservatorship which may lead to commitment, and the discretion to file a petition in light of that investigation." (*Kaplan, supra,* 216 Cal.App.3d at p. 1360.) "Here, as in the case of a criminal defendant, it is appropriate that when the power of the state is invoked to deprive an individual of her freedom, the decision to commence judicial proceedings should be left to a public officer." (*Ibid.*)

In *In re Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857 (*Martha P.*), the question before the appellate court was whether the voluntary dismissal provision of section 581 applied to the dismissal of a petition for reestablishment of an LPS Act

14

conservatorship. The court held section 581 applied to the special proceeding of an involuntary commitment under the LPS Act under its express terms. (*Martha P.,* at p. 867.) Section 581 permitted voluntary dismissal of an "action" and defined "action" to include a special proceeding. (§ 581, subd. (a)(1).) Further, the LPS Act provided the procedure for establishing a conservatorship followed that of the Probate Code, which in turn referred to the certain procedures for civil actions, including section 581. (*Martha P.,* at pp. 867-868.) Noting the protections provided by the LPS Act to potential conservatees, the court found it "only appropriate that the conservator in reestablishment have the discretion to dismiss or withdraw a petition when the investigation shows the conservatee is no longer gravely disabled." (*Id*. at p. 868.) The public conservator had discretion to file a voluntary dismissal; that dismissal was effective upon tender to the court clerk, and entry of the dismissal terminated the trial court's jurisdiction. Accordingly, the appellate court declined to address the issue of whether the conservatee continued to be gravely disabled. (*Id.* at pp. 871-782.)

In the trial court here, the Public Guardian relied on *Martha P.* in seeking to dismiss the petition the trial court had ordered filed. The court ruled that *Martha P.* did not apply because a Murphy conservatorship was at issue and such a conservatorship was quasi-criminal; accordingly the dismissal provisions of Penal Code section 1385 applied to authorize court dismissal of an action only "in furtherance of justice." We reject the conclusion that Murphy conservatorships are subject to different procedural rules than other conservatorships for the gravely disabled under the LPS Act. Although the conservatorship in *Martha P.* was based on the conservatee's inability to care for herself (Welf. & Inst. Code, § 5008, subd. (h)(1)(A)), and was not a Murphy conservatorship under subdivision (h)(1)(B), nothing in the reasoning of the decision in *Martha P.* depends on that distinction. The procedures of the LPS Act do not distinguish between the two conservatorships for the gravely disabled in any relevant way. (See Pen. Code, § 1370, subds. (c)(2) & (3); Welf. Inst. Code, § 5358, subd. (d)(2).) Although Murphy

15

conservatorships are based on an alternate definition of grave disability under the LPS Act and are concerned with the conservatee's current dangerousness, they are still a type of civil commitment and, once established, they are subject to the same annual renewal process and procedural protections applicable generally to long-term LPS conservatorships. (Welf. & Inst. Code, §§ 5008, subd. (h)(1), 5361; *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 442-443, 445, 454 (*Kennebrew*); *People v. Karriker* (2007) 149 Cal.App.4th 763, 776 (*Karriker*).) An LPS commitment is not punishment in either design or purpose. (*Sorenson v. Superior Court* (2013) 219 Cal.App.4th 409, 432.)

As noted *ante*, two cases have specifically addressed the situation where a public guardian or public conservator refused to file a petition for a Murphy conservatorship under the LPS Act: *Karriker* and *Kennebrew*. We turn now to those cases.

In *Karriker, supra,* 149 Cal.App.4th 763, the public guardian appealed from an order compelling the filing of an LPS Act conservatorship. The appellate court treated the order as a writ of mandate. (*Id*. at pp. 773-774.) Penal Code section 1370, subdivision (c)(2) authorizes a court to order the conservatorship investigator to "initiate proceedings" for a conservatorship. The *Karriker* court interpreted the phrase "initiate proceedings" to refer "not to filing the petition but to conducting the investigation that is required before a petition may be filed under Chapter 3 of the [LPS] Act." (*Karriker,* p. 782.) The court noted this language was the same as that contained in Penal Code section 1370.01, subdivision (c)(2), referencing a standard LPS conservatorship (unable to care for self) for an incompetent misdemeanant. There was "absolutely no reason to believe" that section gave the court authority to order the filing of a conservatorship petition. (*Karriker,* p. 783, fn. 11.)

The *Karriker* court rejected the argument that the criteria for a Murphy conservatorship necessarily involved pure questions of law, but recognized that some may. "While a court may be able to determine conclusively whether a defendant meets

16

some of the statutory requirements of section 5008, subdivision (h)(1)(B)--namely, whether the individual has been found mentally incompetent to stand trial and has been charged with certain felonies by an indictment or information that has not been dismissed--" other criteria pose questions of fact and expert judgment, particularly whether defendant represents a danger to others by reason of mental disease, defect, or disorder. (*Karriker, supra,* 149 Cal.App.4th at p. 784.)

The court found many reasons for not compelling the public conservator to file the petition. First, as the *Kaplan* court had found, that power was vested in the county officer designated in the LPS Act. (*Karriker, supra,* 149 Cal.App.4th at p. 785.) The determination whether to seek a conservatorship often requires "familiarity with the complexities of mental disease and the mental health system" and thus necessitates the exercise of sound discretion. (*Id.* at p. 786.) "Moreover, County Counsel, who represents the Conservator in this action, or the district attorney is required to prosecute the petition when it has been filed. (§ 5114.) Ordering the Conservator to file a petition and attempt to prove its allegations when the Conservator in good conscience does not believe that the allegations are merited would thus create an irreconcilable ethical dilemma for more than one public official. Moreover, permitting the court to act both as prosecutor and potentially as the trier of fact would be inconsistent with the statutory scheme of protection that is built into the LPS Act." (*Karriker,* at p. 786.)

The *Karriker* court cited *Heckler v. Chaney* (1985) 470 U.S. 821, 831 [84 L.Ed.2d 714], in which the high court stated: "This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion. [Citations.] This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." The *Karriker* court concluded: "Although a court must be satisfied before relief is granted, the court may not control the discretion conferred upon another public

17

official to determine whether to seek such relief." (*Karriker, supra,* 149 Cal.App.4th at p. 787.)

Finally, the court addressed the argument that even if the conservator had no mandatory duty to file the petition, she abused her discretion in failing to do so. "Accepting the premise that a public conservator might abuse his or her discretion in refusing to file a petition for a conservatorship under the LPS Act," the court found no abuse of discretion because the criteria for a Murphy conservatorship were not satisfied. (*Karriker, supra,* 149 Cal.App.4th at p. 788.) There was no pending indictment or information (*id.* at p. 784, fn. 12) and no evidence of current dangerousness (*id.* at p. 788, fn. 14). "The Conservator did not abuse her discretion in failing to seek an LPS conservatorship for one who does not satisfy the statutory criteria." (*Id.* at p. 788.)

In *Kennebrew, supra,* 222 Cal.App.4th 434, the County of Los Angeles sought review of an order compelling the public guardian to petition for a conservatorship for Nattie Kennebrew, who while suffering delusions due to dementia had killed a man. The trial court twice referred the matter to the public guardian and each time the public guardian refused to seek a conservatorship on the ground that dementia was not a qualifying mental disorder. (*Id.* at p. 440.) The trial court found no rational basis or compelling interest for this refusal and ordered the public guardian to file the petition. (*Id.* at p. 441.) In affirming the order, the appellate court distinguished *Karriker,* because in that case the criteria for a Murphy conservatorship had not been satisfied. (*Id.* at pp. 446-447.) The court found dementia was a qualifying mental disorder. (*Id.* at pp. 447-451.) The court found authority to compel the public guardian to file the petition in Welfare and Institutions Code section 5354, subdivision (a) concerning the report of the conservatorship investigator. That provision provided in part: "If the officer providing conservatorship investigation recommends against conservatorship, he or she shall set forth all alternatives available." The subdivision later says, "The court may receive the report in evidence and may read and consider the contents thereof in rendering its

18

judgment."[3]  (Welf. & Inst. Code § 5354, subd. (a).)  The *Kennebrew* court reasoned: "Unless the court has discretion to override the investigator's negative recommendation, there would be no reason for it to 'consider the contents' of the report when determining whether a conservatorship should be imposed.  Unless the court has discretion to order the establishment of an LPS conservatorship notwithstanding the investigator's negative recommendation, the provision would have no meaning or purpose." (*Kennebrew,* at p. 454.)  A court has "authority to determine that the public guardian has abused its discretion when its erroneous interpretation of a controlling statute has resulted in a refusal to seek an LPS conservatorship when the statutory requirements for that remedy are met."  (*Ibid.*)  The court concluded that the court's authority under Penal Code section 1370, subdivision (c)(2) to " 'order the conservatorship investigator . . . to initiate conservatorship proceedings' " referred to petitioning for conservatorship.  (*Kennebrew,* at p. 454.)

---

[3]  Subdivision (a) of Welfare and Institutions Code section 5354 reads in full:  "The officer providing conservatorship investigation shall investigate all available alternatives to conservatorship and shall recommend conservatorship to the court only if no suitable alternatives are available.  This officer shall render to the court a written report of investigation prior to the hearing.  The report to the court shall be comprehensive and shall contain all relevant aspects of the person's medical, psychological, financial, family, vocational, and social condition, and information obtained from the person's family members, close friends, social worker, or principal therapist.  The report shall also contain all available information concerning the person's real and personal property.  The facilities providing intensive treatment or comprehensive evaluation shall disclose any records or information which may facilitate the investigation.  If the officer providing conservatorship investigation recommends against conservatorship, he or she shall set forth all alternatives available.  A copy of the report shall be transmitted to the individual who originally recommended conservatorship, to the person or agency, if any, recommended to serve as conservator, and to the person recommended for conservatorship.  The court may receive the report in evidence and may read and consider the contents thereof in rendering its judgment."

19

We agree with the *Karriker* court that the term "initiate conservatorship proceedings" in Penal Code section 1370, subdivision (c)(2) means to refer a case to the conservatorship investigator for investigation, but it is the *investigator*, not the court, who decides whether to file a petition for conservatorship. We reach this conclusion for several reasons. Under Penal Code section 1370, subdivision (c)(2), "the court shall order the conservatorship investigator of the county of commitment of the defendant to initiate conservatorship proceedings for the defendant pursuant to Chapter 3 (commencing with Section 5350) of Part 1 of Division 5 of the Welfare and Institutions Code." Chapter 3 contains numerous provisions relating to a conservatorship for a gravely disabled person, including Welfare and Institutions Code section 5354 describing the investigation. If the Legislature intended the court to order the *filing of a petition*, rather than to order an investigation, it could have said so. It did not.

Only the district attorney and county counsel have statutory authority to present the allegations of grave disability to the court. (Welf. & Inst. Code, § 5114.) As these are the legal officers representing the conservatorship investigator, this delegation of authority suggests it is the conservatorship investigator who makes the decision whether to file a petition. We agree with the *Karriker* and *Kaplan* courts that there are good reasons--which those cases set forth--for giving the decision and authority to file the petition solely to the conservatorship investigator. (*Karriker, supra,* 149 Cal.App.4th at pp. 785-786; *Kaplan, supra,* 216 Cal.App.3d at p. 1360.)

Welfare and Institutions Code section 5352.5 addresses initiation of conservatorship proceedings upon recommendation of the medical director of the state hospital or others. This statute uses similar language to that contained in Penal Code section 1370, subdivision (c)(2)--"conservatorship proceedings may be initiated." The medical director does not have authority to file a petition (Welf. & Inst. Code, § 5114), so the term "initiation of proceedings" cannot mean *filing* the petition, but instead must mean only referring for an investigation. Also, as the *Karriker* court noted, identical

20

language is used in Penal Code section 1370.01, subdivision (c)(2), relating to incompetent misdemeanants who are unable to care for themselves. (*Karriker, supra*, 149 Cal.App.4th at p. 783, fn. 11.)

An LPS conservatorship lasts only one year and the appointed conservator has authority to petition for reappointment; if a private conservator fails to petition for reappointment, the public guardian may petition for appointment. (Welf. & Inst. Code, §§ 5361-5362.) If there is no petition to reestablish the conservatorship, the court must terminate the conservatorship. (*Id.,* § 5462, subd. (b).) Since the trial court has no authority to extend the conservatorship, Penal Code section 1370, subdivision (c)(2) cannot reasonably be interpreted to permit the court to override the conservatorship investigator's discretion and order the establishment of the conservatorship.

Nothing in the statutory scheme underlying Murphy conservatorships grants the trial court the authority to order the conservatorship investigator to file a petition, nor is filing the petition a ministerial act that can be compelled by a writ of mandate. Rather, as *Kaplan* and *Karriker* held, the Legislature has vested the authority and the discretionary decision to file a petition for a Murphy conservatorship in the conservatorship investigator. Concern for public safety alone does not trump these statutory provisions. The law does not compel the confinement of everyone who appears dangerous or unfit. (See *Karriker, supra,* 149 Cal.App.4th at p. 788 ["an LPS conservatorship is not a catch-all for all incompetent defendants"]; see also *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 399 [Welf. & Inst. Code, § 5150, allowing an involuntary hold of one who is gravely disabled or who due to mental disorder is a danger to himself or others, is permissive not mandatory].)

Because we conclude that the trial court has no authority to order the Public Guardian to file a petition to establish a Murphy conservatorship, we need not address the argument, joined by amici curiae, that such authority violates the separation of powers doctrine. Our interpretation of the applicable statutes is consistent with the principle that

21

courts should avoid an interpretation that invites constitutional difficulties. (*In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339, 349.)

IV

*Whether Public Guardian Abused His Discretion*

While we find the Public Guardian has discretion whether to file a petition for a Murphy conservatorship, we agree with *Kennebrew* that the exercise of that discretion may itself be reviewed for an abuse of discretion. (*Kennebrew, supra,* 222 Cal.App.4th at p. 453.) As *Karriker* found, an order compelling the filing of a conservatorship petition is a writ of mandate. (*Karriker, supra,* 149 Cal.App.4th at p. 773.) "Although mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion." (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799.) Thus, while a court can order an investigation, it may not order a conservatorship investigator to file a petition, a discretionary decision that cannot be forced to resolve in a particular manner. However, the court can review the *resulting* discretionary decision for an abuse of discretion. It is an abuse of discretion to misinterpret or misapply the law. (*Prigmore v. City of Redding* (2012) 211 Cal.App.4th 1322, 1334.)

The Public Guardian refused to file a petition for a Murphy conservatorship, and later sought to dismiss the compelled petition rather than take the matter to trial, in part due to his view that two criteria were unsatisfied. These criteria were a valid pending information and a felony charge that involved death, great bodily injury, or a serious threat to the well-being of another. (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) These criteria involve questions of law that may be determined by a court. (*Karriker, supra,* 149 Cal.App.4th at p. 784.) We turn now to the question of whether the Public Guardian was within his discretion when he determined these criteria had not been satisfied.

A. *The Pending Information Was Valid*

The Public Guardian contends the requirement for a Murphy conservatorship of a pending information was not satisfied because the information was invalid. The basis for this argument is the undisputed fact that the preliminary hearing was held while L.C. was incompetent. The Public Guardian relies on *People v. Duncan* (2000) 78 Cal.App.4th 765, 772 (*Duncan*): "Conducting a preliminary hearing when the defendant is mentally incompetent violates his right to due process of law."

Previously, Penal Code section 1368.1 provided that no competency hearing could be held until after an information or indictment had been filed. (Former Pen. Code, § 1368.1, subd. (a), Stats 1974, ch. 1511, § 4, p. 3317.) In *Hale v. Superior Court* (1975) 15 Cal.3d 221 (*Hale*), the People argued the statute was unconstitutional. They argued "it would be a denial of due process to conduct a preliminary hearing when doubt has arisen as to a defendant's competency." (*Id.* at p. 223.) Our Supreme Court disagreed: "Rather than denying due process, the statute promotes it by insuring that a felony defendant will not be committed for incompetency unless there is probable cause to believe he committed the crime with which he is charged. The problem noted by the People may be resolved by conducting another preliminary hearing (or a grand jury hearing) when a defendant adjudged incompetent subsequently regains his competence." (*Ibid.*)

The *Hale* court rejected the argument that a mentally incompetent defendant is denied due process if forced to proceed with a preliminary hearing. (*Hale, supra,* 15 Cal.3d at p. 227.) The court quoted from *Jackson v. Indiana* (1972) 406 U.S. 715, 740-741 [32 L.Ed.2d 435, 452]: "Both courts and commentators have noted the desirability of permitting some proceedings to go forward despite the defendant's incompetency. For instance, § 4.06 (3) of the Model Penal Code would permit an incompetent accused's attorney to contest any issue 'susceptible of fair determination prior to trial and without the personal participation of the defendant.' An alternative draft of § 4.06 (4) of the

23

Model Penal Code would also permit an evidentiary hearing at which certain defenses, not including lack of criminal responsibility, could be raised by defense counsel on the basis of which the court might quash the indictment. Some States have statutory provisions permitting pretrial motions to be made or even allowing the incompetent defendant a trial at which to establish his innocence, without permitting a conviction. We do not read this Court's previous decisions to preclude the States from allowing, at a minimum, an incompetent defendant to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions through counsel."

The due process concern arises if the defendant is brought to trial based on an information obtained after a preliminary hearing which was held when the defendant is incompetent. "Therefore, if a preliminary hearing is held while a defendant is incompetent, and if criminal proceedings subsequently resume upon restoration of his competence, the defendant would be entitled to have the information set aside." (*Hale, supra*, 15 Cal.3d at p. 228.) To bring the defendant to trial would require a second preliminary hearing or grand jury proceeding. (*Ibid.*)

In 1982 the Legislature amended Penal Code section 1368.1. (Stats. 1982, ch. 444, § 1, p. 1813.) Under the amendment, Penal Code section 1368.1, subdivision (a) reads as it does today. "If the action is on a complaint charging a felony, proceedings to determine mental competence shall be held prior to the filing of an information unless the counsel for the defendant requests a preliminary examination under the provisions of Section 859b. At such preliminary examination, counsel for the defendant may (1) demur, (2) move to dismiss the complaint on the ground that there is not reasonable cause to believe that a felony has been committed and that the defendant is guilty thereof, or (3) make a motion under Section 1538.5." Under this current version of the statute, the "two preliminary hearings" rule of *Hale* survives. (*Duncan*, *supra*, 78 Cal.App.4th at p. 771.) In *Duncan*, after his competence was restored, the defendant moved to dismiss the information, arguing that he was incompetent at the time of the preliminary hearing. The

24

trial court granted the motion and the appellate court affirmed because substantial evidence supported the trial court's finding that defendant was incompetent at the time of the preliminary hearing. (*Id*. at 774.) *Duncan's* statement that the preliminary hearing violated defendant's due process rights, quoted and relied on by the Public Guardian in this case, is limited to a preliminary hearing *that is the basis for proceeding to a criminal trial on the charges*.

Here, L.C.'s counsel requested a preliminary hearing, as permitted under Penal Code section 1368.1. Should L.C. be restored to competency, he would *at that time* be entitled to dismissal of the information. (*Duncan, supra,* 78 Cal.App.4th at pp. 771-772.) But, as *Hale* teaches, it is not the holding of a preliminary hearing while defendant is incompetent that violates defendant's due process rights, it is proceeding to trial on an information so obtained. (*Hale, supra,* 15 Cal.3d at p. 227.) That is not the situation here.

To pass constitutional muster, a Murphy conservatorship may be established only where a magistrate or grand jury has found probable cause to believe the incompetent defendant has committed the charged felony. (*Hofferber, supra,* 28 Cal.3d at p. 174.) As the *Hale* court stated, the preliminary hearing for an incompetent defendant promotes, rather than denies, due process "by insuring that a felony defendant will not be committed for incompetency unless there is probable cause to believe he committed the crime with which he is charged." (*Hale*, *supra,* 15 Cal.3d at p. 223.) Moreover, if defendant's argument were correct, there could never be a Murphy conservatorship based on a pending information for a defendant who was not competent at the time the preliminary hearing was held; the language allowing a Murphy conservatorship to proceed if there is a *pending information* would be a nullity if the Public Guardian's interpretation were correct.

As the trial court repeatedly found, the information was valid for purposes of proceeding with a Murphy conservatorship, notwithstanding that it was subject to

25

dismissal if L.C. regained competency and criminal proceedings were resumed. The Public Guardian abused his discretion in determining the information was invalid.

B. *The Charged Felony was Sufficiently Serious*

The Public Guardian contends L.C.'s pending felony charge for corporal injury on a cohabitant (Pen. Code, § 273.5) does not qualify as "a felony involving death, great bodily harm, or a serious threat to the physical well-being of another person." (Welf. & Inst. Code, § 5008, subd. (h)(1)(B).) A violation of Penal Code section 273.5 requires willfully inflicting corporal injury on certain persons resulting in a traumatic condition. (Pen. Code, § 273.5, subds. (a) & (b).) A traumatic condition is "condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." (*Id.,* subd. (d).)

A traumatic condition can be a minor injury, such as a bruise. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085-1086.) Thus, some violations of Penal Code section 273.5 are insufficient to meet the required felony charge for a Murphy conservatorship. In *Kennebrew, supra,* 222 Cal.App.4th at pages 445, 446, and 447, the court repeatedly uses the terms "serious" and "violent" felony. Those terms have a specific meaning in California criminal law. Penal Code section 1192.7, subdivision (c) defines "serious felony" as several specific crimes; Penal Code section 667.5, subdivision (c) defines a shorter list of violent felonies. Penal Code section 273.5 does not fall within either definition.

L.C. argued to the trial court that only such enumerated felonies meet the requirements for a Murphy conservatorship, and the Public Guardian agreed. The trial court disagreed with the position that a Murphy conservatorship is limited to situations where there is a charge of a "serious" or "violent" felony, as defined in the Penal Code, and so do we. Welfare and Institutions Code section 5008, subdivision (h)(1)(B) does not use those terms or refer to the definitions in the Penal Code, and does not contain

26

language limiting consideration to the elements of the charged felony. Generally, where the determination of the nature of a felony concerns the conduct of the defendant, the entire record of conviction may be considered. (See *People v. Guerrero* (1988) 44 Cal.3d 343, 355.) Here, although there is no record of conviction, the determination was made after the preliminary hearing, so a record setting forth facts of the alleged crime is available and probable cause has been found. We see no reason to bar this record of pertinent facts about the case from consideration in determining whether defendant's offenses involve "great bodily harm, or a serious threat to the physical well-being of another person." Considering all the facts available to determine the exact nature of defendant's conduct comports with the purpose of a Murphy conservatorship to protect public safety. (*Skeirik, supra,* 229 Cal.App.3d at p. 456 [the provisions for Murphy conservatorships were added to the LPS Act in order to distinguish between persons who do, and do not, present a danger to the public].)

The Public Guardian contends the facts from the preliminary hearing are insufficient to show great bodily injury or a serious threat to the well-being of another. We disagree. The record reflects that L.C. put a dog leash on his victim, tightened it until she had trouble breathing, and dragged her 40 to 50 feet. The assault caused pain and left a raised welt on her neck. While choking alone may be insufficient to establish great bodily injury, it is sufficient to support a finding of force likely to cause great bodily injury. (See *People v. Covino* (1980) 100 Cal.App.3d 660, 667-668.) Because the victim could easily have suffered a serious injury, a trier of fact could find L.C.'s actions in both dragging and choking his victim presented a serious threat to his victim's well-being. The Public Guardian abused his discretion in concluding the felony charge was insufficient as a matter of law to support a Murphy conservatorship.

Therefore we remand for further proceedings to allow the Public Guardian to exercise his discretion in accordance with the applicable law.

27

## DISPOSITION

The trial court's orders (1) compelling the Public Guardian to petition for a Murphy conservatorship, (2) compelling the Public Guardian to proceed to a conservatorship trial on the petition, and (3) disqualifying county counsel and appointing the district attorney to prosecute the petition are vacated.  The matter is remanded to allow the Public Guardian to exercise his discretion and decide whether to petition for a Murphy conservatorship in accordance with the law.


_____/s/_____
Duarte, J.


We concur:


_____/s/_____
Murray, Acting P. J.


_____/s/_____
Hoch, J.