Filed 4/3/25  Conservatorship of M.C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of M.C. | |
| ORANGE COUNTY PUBLIC GUARDIAN, <br><br> Petitioner and Respondent, <br><br> v. <br><br> M.C., <br><br> Objector and Appellant. | G063844 <br><br> (Super. Ct. No. 30-2023-01353455) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Mena Guirguis, Judge. Affirmed. Motion to Dismiss denied.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Andrea Coller and Janice L. Fay, Deputy County Counsel, for Plaintiff and Respondent.

*       *       *

After a jury found M.C. was "gravely disabled" within the meaning of Welfare & Institutions Code section 5008, subdivision(h)(1)(B),[1] the court ordered that he be placed in a "public locked facility." M.C. appeals, contending the court erred in denying his request to be placed in a "private locked facility" due to the lengthy wait for an opening at a public locked facility. As discussed below, we find no error because the relevant statutory provision permits placement in a "public locked facility" and the trial court's decision to choose that placement over others is reasonable and supported by substantial evidence. We thus affirm the judgment. However, the underlying issue implicated in this appeal—indefinite detention of a mentally ill person in jail while waiting for openings at mental health facilities—is an ongoing concern, and we note this issue may need to be addressed by filing for reconsideration with the trial court or via a petition for a writ.

STATEMENT OF THE CASE

On October 27, 2020, the Orange County District Attorney filed a felony complaint charging M.C. with attempted murder and assault with a deadly weapon. On September 8, 2021, the trial court found M.C. incompetent to stand trial and committed him to a state institution for two years pursuant to Penal Code section 1370.

On September 28, 2023, the Orange County Public Guardian (Public Guardian) petitioned the court to reappoint it as the Conservator for

---

[1] All further statutory references are to the Welfare & Institutions Code, unless otherwise stated.

M.C., who was presently confined in Orange County jail, and establish a conservatorship pursuant to section 5008, subdivision (h)(1)(B). Following a jury trial on the petition, on February 22, 2024, a unanimous jury found M.C. was "gravely disabled" within the meaning of section 5008, subdivision (h)(1)(B).

Subsequently, the Public Guardian submitted a proposed judgment that, among other things, authorized placement of M.C. in "a medical, psychiatric, nursing, or other state licensed facility or state hospital, county hospital, hospital operated by the Regents of the University of California, United States government hospital, or other nonmedical facility approved by the state Department of Social Services or an agency accredited by the state Department of Health Care Services pursuant to . . . Section 5358[(a)(2)]," that is, in a "'public locked facility.'" Counsel objected and suggested placement in a "'private locked facility.'" In response, the Public Guardian argued a private placement would be inappropriate because the private institution could reject the placement. The trial court granted the Public Guardian's request to authorize placement in a public locked facility. It stated it was open to reconsidering placement if there were no changes over the following year.

DISCUSSION

I.

MOTION TO DISMISS

The Public Guardian contends this court should dismiss the instant appeal as moot because M.C. seeks only placement in a private locked facility and it has "received a *conditional* acceptance for placement of [M.C.] in a private, locked facility." (Italics added.) M.C. opposes dismissal, arguing he has not yet been placed in a private locked facility and "[t]here is no

3

guarantee [he] would be transferred to a private, locked facility and receive treatment" in a timely manner.

As of the time this matter was submitted, M.C. had not been placed in a facility. After the case was submitted, the Public Guardian informed this court that M.C. has been placed in a private locked facility. Moreover, the challenged placement order has been replaced with a new placement order due to the expiration of the conservatorship. Although the case is technically moot, we exercise our discretion to resolve the issue raised in this appeal as it involves a matter of continuing public interest that is likely to recur while evading appellate review. (See, e.g., *People v. Cheek* (2001) 25 Cal.4th 894, 897-898 [concluding the appeal of an expired commitment order was moot, but addressing the issue raised because it was "likely to recur while evading appellate review" and "involve[d] a matter of public interest"]; *People v. Rish* (2008) 163 Cal.App.4th 1370, 1381 [declining to dismiss appeal for mootness because issue of the sua sponte duty of trial court in mentally disordered offender proceeding to consider suitability for outpatient treatment is an issue of public interest that is capable of repetition, yet evading review].). We thus deny the motion to dismiss.

II.

PLACEMENT ORDER

A. *Applicable Law*

"The Lanterman-Petris-Short Act [the LPS Act] governs the involuntary treatment of the mentally ill in California. Enacted by the Legislature in 1967, the act includes among its goals ending the inappropriate and indefinite commitment of the mentally ill, providing prompt evaluation and treatment of persons with serious mental disorders, guaranteeing and protecting public safety, safeguarding the rights of the

4

involuntarily committed through judicial review, and providing individualized treatment, supervision and placement services for the gravely disabled by means of a conservatorship program." (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1008-1009.) "The act authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental disorder and unable or unwilling to accept voluntary treatment." (*Id.* at p. 1009, fn. omitted.)

"There are two categories of conservatorships under the LPS Act based on its definition of gravely disabled: (1) an 'LPS conservatorship' pursuant to Welfare and Institutions Code section 5008, subd. (h)(1)(A); and (2) a 'Murphy conservatorship' pursuant to Welfare and Institutions Code section 5008, subd. (h)(1)(B). [Citation.] A Murphy conservatorship may be established if a person is criminally charged with a felony offense, has been found mentally incompetent to stand trial under Penal Code section 1370, and all of the following conditions exist: (1) the charges include a felony involving death, great bodily harm, or a serious threat to the well-being of another person; (2) there has been a probable cause determination and the charges have not been dismissed; (3) as a result of a mental health disorder, the person is unable to understand the nature and purpose of the proceedings against them and to assist counsel in their defense in a rational manner; and (4) the person represents a substantial danger of physical harm to others by reasons of a mental disease, defect, or disorder." (*In re Lerke* (2024) 107 Cal.App.5th 685, 697 (*Lerke*).)[2]

---

[2] A "Murphy conservatorship" is named after the legislator who sponsored the legislation. (*Conservatorship of Lee C.* (2017) 18 Cal.App.5th 1072, 1085 (*Lee C.*).)

5

"The person for whom the conservatorship is sought has the right to a jury trial on the issue of whether the person is gravely disabled. [Citation.] The standard of proof is beyond a reasonable doubt. [Citation.] The Murphy conservatorship expires after one year and the conservator may petition for reappointment for a succeeding one-year period. [Citation.]" (*Lee C.*, *supra*, 18 Cal.App.5th at p. 1086.)

"When ordered by the court after the hearing required by this section, a conservator . . . shall place his or her conservatee as follows: [¶] . . . [¶] (B) For a conservatee who is gravely disabled, as defined in subparagraph (B) of paragraph (1) of subdivision (h) of Section 5008, in a placement that achieves the purposes of treatment of the conservatee and protection of the public." (§ 5358, subd. (a)(1).) "The placement may include a medical, psychiatric, nursing, or other state-licensed facility, or a state hospital, county hospital, hospital operated by the Regents of the University of California, a United States government hospital, or other nonmedical facility approved by the State Department of Health Care Services or an agency accredited by the State Department of Health Care Services, or in addition to any of the foregoing, in cases of chronic alcoholism, to a county alcoholic treatment center." (§ 5358, subd. (a)(2).)

*B. Analysis*

M.C. contends his placement in a "public locked facility" violated the LPS Act "as he would have no chance of being transferred from jail to the court's designated placement for the entire duration of his one-year Murphy conservatorship." His contention implicates two issues: (1) Whether placement in a "public locked facility" is permissible under the LPS Act?; and (2) Whether placement in a "public locked facility" as opposed to a "private

6

locked facility" is reasonable in light of the backlog to transfer into the "public locked facility"? We address each issue in order.

First, a conservatee in a Murphy conservatorship may be placed in a "public locked facility" or a "private locked facility" or other appropriate facility at the discretion of the court. The relevant statutory provision states that "[p]lacement may include a medical, psychiatric, nursing, or other state-licensed facility, or a state hospital, county hospital, . . . or other nonmedical facility approved by the State Department of Health Care Services or an agency accredited by the State Department of Health Care Services." (§ 5358, subd. (a)(2).) Both a "public locked facility" and a "private locked facility" fall within the permissible placements allowed under the statutory provision. Thus, placement in a "public locked facility" is permissible under the LPS Act.

Second, in light of the "may" language in the placement provision, the trial court has discretion to determine the placement. Here, after hearing argument, the trial court determined placement in "a public locked facility" was the most appropriate placement because as stated by the Public Guardian, a private institution may reject the transfer due to M.C.'s criminal history. M.C. does not dispute a private institution may reject the transfer. Nor has he produced any evidence that placement in a "private locked facility" would be materially better than a "public facility," especially in reducing any delay in the transfer. More important, the trial court stated it was open to reconsideration of placement due to changing circumstances. Accordingly, M.C. has failed to show any abuse of discretion in ordering placement in a "public locked facility."

M.C.'s related contention that placement in a "public locked facility" violates his due process rights is meritless. In *Conservatorship of*

7

*Hofferber* (1980) 28 Cal.3d 161, the California Supreme Court held the LPS statutory scheme complies with all constitutional due process requirements. (See *id.* at p. 183 ["Appellant's due process rights are not jeopardized by our interpretation"]; see also *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235 ["The due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act"].) As discussed above, that statutory scheme permits placement in a "public locked facility." M.C. was given notice the Public Guardian would seek a Murphy conservatorship, a unanimous jury found beyond a reasonable doubt that he was "gravely disabled," and he was represented by counsel throughout the proceedings, including at the hearing on placement. He thus received all process due to him. Accordingly, we affirm the trial court's placement order.

Although we affirm the placement order, we acknowledge the concern that underlies this appeal and trial counsel's objection. County jail is not a legally valid placement for a conservatee in a Murphy conservatorship under the relevant statutory provisions. (See *Lerke, supra*, 107 Cal.App.5th at p. 699.) To the extent the lack of available openings in appropriate treatment facilities is causing conservatees (and, specifically, M.C.) to languish in jail for long periods of time awaiting transfer, that concern is properly addressed in the first instance by the trial court, which is precisely what the court here suggested when it invited M.C.'s counsel to come back to it and petition for relief if M.C. had not received a transfer to a public locked facility in several months.  Such a request to the trial court might take the form of a motion for reconsideration or a petition for a writ of habeas corpus; we offer no opinion on the proper procedural next step.  But until some form of relief is sought in the first instance from the trial

8

court based on a developed factual record of what has actually transpired in M.C.'s case, it is premature to ask this court for relief.  The issue is not ripe for our review.

## DISPOSITION

The judgment is affirmed.


                                        DELANEY, J., ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.